IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TAMMYE BURNHAM,

    Plaintiff,                    No. CIV 09-2054 EFB

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.                ORDER
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, defendant's motion for summary judgment is denied, plaintiff's motion for summary judgment is granted and the case is remanded for further proceedings.

I. BACKGROUND

        Plaintiff, born March 28, 1963, filed an application for SSI on January 23, 2007. Administrative Record ("AR") 13. She had previously filed applications for SSI and Disability Insurance Benefits ("DIB") between 1998 and 2001, which were denied. *Id.* at 13-14. Plaintiff's January 23, 2007 application was denied initially and upon reconsideration, and plaintiff requested an administrative hearing. *Id.* at 16, 56. On January 14, 2009, a hearing was held

before an administrative law judge ("ALJ").  *Id.* at 353-399.  Plaintiff was represented by counsel at the hearing, and testified at the hearing, along with vocational expert David M. Dettmer.  *Id.*

The ALJ issued a decision on March 6, 2009, finding that plaintiff was not disabled.[1]  *Id.* at 13-27.  The ALJ noted that plaintiff had filed prior applications for benefits and applied the presumption of continuing non-disability.[2]  The ALJ found that plaintiff had "submitted

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits under both programs.  *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:
>    Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>    Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>    Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>    Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>    Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).
The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

[2] A prior, final determination that a claimant is not disabled creates a presumption that the claimant retains the ability to work after the date of the prior administrative decision.  *See Schneider v. Comm'r of the Soc. Sec. Admin.,* 223 F.3d 968, 973 (9th Cir. 2000).  This presumption of "continuing non-disability" may be overcome by a showing of "changed circumstances," by new facts establishing a previously unlitigated impairment or other apparent error in the prior determination, or where the claimant's unrepresented status had resulted in an inadequate record.  *See id.* (worsened psychological test scores and different diagnoses constitute changed circumstance); *Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009) (new allegation of mental impairment and attainment of advanced age constitute changed circumstance); *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) (attainment of advanced age constitutes changed circumstance).

2

sufficient new and material evidence" regarding her medical condition to rebut the presumption of continuing non-disability. *Id.* at 17. Specifically, the ALJ found:

> 1. The claimant has not engaged in substantial gainful activity since her amended alleged disability onset date of January 23, 2007 (20 CFR 416.971 *et seq.*).
>
> ...
>
> 2. The claimant has the following severe impairments: sarcoidosis/pulmonary fibrosis with restrictive pulmonary disease and diabetes mellitus (20 CFR 416.921 *et seq.*).
>
> ...
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform substantially the full range of sedentary work as defined in 20 CFR 416.967(a) except that she has environment limitations that preclude concentrated exposure to humidity, noise, vibration, hazards, fumes, odors, dusts, gases, smoke, solvents, cleaners and chemicals.
>
> ...
>
> 5. The claimant is capable of performing past relevant work as a claims examiner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).
>
> ...
>
> 6. The claimant was born on March 28, 1963 and was 43 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
> ...
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since January 23, 2007, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 8-16.

Plaintiff requested that the Appeals Council review the ALJ's decision. However, on May 27, 2009, the Appeals Council denied review, leaving the ALJ's decision as the "final decision of the Commissioner of Social Security." *Id.* at 5-7.

II. STANDARD OF REVIEW

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff argues that the ALJ improperly rejected the opinions of her treating physicians.[3] The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.* To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

The ALJ erred by not giving specific, legitimate reasons for rejecting the limitations assessed by Dr. Barger. Dr. Barger completed a "Pulmonary Residual Functional Capacity Questionnaire" where, among other findings, she checked a box indicating that plaintiff's symptoms were frequently severe enough to interfere with her attention and concentration needed to perform even simple work tasks. AR 304. Dr. Barger also indicated that excess

---

[3] Plaintiff also contends that the ALJ erred by improperly discrediting her testimony and failing to pose a complete hypothetical question to the vocational expert. Dckt. No. 23 at 1. As the court finds that the case must be remanded for further proceedings on the first ground, it does not reach these arguments.

5

fatigue would affect plaintiff's ability to work at a regular job on a sustained basis. *Id.* at 306. Dr. Barger also noted that plaintiff should avoid *all* exposure to cigarette smoke, soldering fluxes, solvents/cleaners, fumes, odors, gases, and chemicals, and should avoid *concentrated* exposure to dust. *Id.*

In discussing Dr. Barger's opinion, the ALJ stated, "Dr. Berger's [sic] residual functional capacity findings are consistent with the objective medical record showing inactive sarcoidosis and improvement in her breathing problems and thus entitled to substantial weight." *Id.* at 24. Thus, the ALJ purported to adopt Dr. Barger's RFC finding. But the ALJ's RFC finding did not contain the limitations in Dr. Barger's opinion.

The ALJ found plaintiff had the RFC "to perform substantially the full range of sedentary work . . . except that she has environmental limitations that preclude *concentrated* exposure to humidity, noise, vibration, hazards, fumes, odors, dusts, gases, smoke, solvents, cleaners and chemicals." *Id.* at 21 (emphasis added). Later in his opinion the ALJ assessed a slightly different RFC, stating, "claimant retains the residual functional capacity to perform substantially all of the full range of sedentary work except that she has environmental limitations" "that preclude *concentrated* exposure to dust, smoke, fumes, gases, pollens, allergens, chemicals and other irritants." *Id.* at 22 (emphasis added). The ALJ posed the following hypothetical RFC to the VE: "If an individual were limited to purely sedentary work and could have no exposure, no concentrated exposure to humidity, noise, vibration, hazards, strong odors, fumes, dusts, gases, smoke, solvents, cleaners, chemicals with an odor..." *Id.* at 385. Thus, the ALJ made several somewhat inconsistent RFC findings, but none of the above RFCs contained Dr. Barger's limitations.

Although the ALJ wrote that he gave "substantial weight" to Dr. Barger's residual functional capacity findings, the ALJ correctly incorporated only one aspect of Dr. Barger's opinion into the RFC–namely, that plaintiff should avoid concentrated exposure to dust. Dr. Barger wrote that plaintiff should avoid *all* exposure to cigarette smoke, soldering fluxes,

6

solvents/cleaners, fumes, odors, gases, and chemicals, but the ALJ's RFC findings state a far less restrictive work preclusion; i.e., that plaintiff must avoid only *concentrated* exposure to these substances.[4] The ALJ did not include Dr. Barger's opinion that excess fatigue would affect plaintiff's ability to work at a regular job on a sustained basis. Nor did the ALJ include Dr. Barger's finding that during a typical workday, plaintiff's experience of pain would frequently interfere with her attention and concentration needed to perform even simple work tasks. The ALJ's RFC findings also contain limitations not assessed by Dr. Barger–that plaintiff should avoid concentrated exposure to humidity, noise, vibration, hazards, pollens, and allergens.

The ALJ, without explicitly stating so, may have concluded that avoiding "all" exposure to common irritants was practically impossible, or that such a work limitation would not be reasonable in light of the other medical evidence. But he did not discredit Dr. Barger's opinion on this basis; instead, he simply ignored her opinion. Perhaps the ALJ concluded that Dr. Barger did not really intend such a categorical assessment. But the form that Dr. Barger filled out has a middle category, "Avoid even moderate exposure," which she did not choose. AR 306. Thus, it is apparent that Dr. Barger meant what she said when she chose "all" rather than "moderate" exposure.

With proper explanation setting forth clear and convincing reasons, the ALJ could have rejected Dr. Barger's opinion. *Lester*, 81 F.3d at 831. However, he provided no such

---

[4] The difference between no exposure and no *concentrated* exposure to such irritants is important, as illustrated by the VE's testimony in this case. The VE testified that most offices have no *concentrated* exposure to the irritants, but that "if it's all exposure to dust, smoke, solvents, and those things, most indoor environments do have some irritants in them." AR 387-88. In that regard, plaintiff testified at the hearing that she no longer cooks because of "fumes, different smells, ground beef, even the lettuce . . ." AR 375. She testified that she no longer goes to basketball games or church because "that's too much" and "too many people have too many different smells so I don't even get to go to church like I would love to." AR 377. She testified that she did not keep her first two appointments with the social security doctor because "I went to the appointment, and then when I walked into the building, the building had a really foul . . . strong smell so I told them I couldn't come in and keep the appointment . . . they arranged for that in a more open spot." 382-83. If Dr. Barger's opinion on the need to avoid such exposures was not credited, there should have been such a finding and the reasons for rejecting it should have been explained.

explanation. Instead, his opinion conflated concentrated exposure and no exposure, even though the VE testified that plaintiff would be disabled if she must have no exposure to the irritants. Under the VE's testimony, the difference is material to the outcome.

Regardless of the exposure to irritants issue, the ALJ's opinion also fails to address the portions of Dr. Barger's opinion that opined that plaintiff's symptoms were frequently severe enough to interfere with her attention and concentration needed to perform even simple work tasks, and that excess fatigue would affect plaintiff's ability to work at a regular job on a sustained basis. These limitations were not contained in the ALJ's RFC finding. Yet, whether this medical opinion is credited is critical. The VE testified that if plaintiff's ability to concentrate was frequently interfered with, "it would depend on the extent of the interference obviously, but it could be...problematic all the way through completely eliminating work depending on the severity." Again, the ALJ might or might not have credited the statements of the VE but it is not the role of this court to make that finding or supply those reasons.

Not only did the ALJ fail to include Dr. Barger's limitations, which he purportedly credited, in the RFC, but he also inconsistently purported to both credit and reject plaintiff's other treating physicians' opinions. In addition, although he purported to credit the opinions of the State Agency medical consultants, he failed to include their limitations in his RFC finding as well. In explaining how he reached his RFC determination, the ALJ wrote:

> In summary, based on a thorough review of the overall record in this case, the undersigned finds that the claimant retains the residual functional capacity for a significant range of sedentary work as particularly described above. In reaching this determination as to the residual functional capacity, the undersigned credited the medical findings, opinions, and diagnostic conclusions of the claimant's treating and examining physicians. Finding no medical opinions or credible medical evidence contrary to that rendered by the State Agency medical consultants at the initial and reconsideration determination levels, the undersigned gives the State Agency findings substantial weight.

*Id.* at 25. Thus, the ALJ purported to credit plaintiff's other treating doctors, Dr. Lenaerts, a neurologist, and Dr. Khan, a foot and ankle specialist, whose opinions he also purported to reject elsewhere in the opinion. Dr. Lenaerts completed a "Medical Assessment of Ability to do Work-

8

Related Activities" questionnaire in which he opined that plaintiff's environmental restrictions include temperature extremes, chemicals, noise and vibration, and that "excessive concentration is difficult." AR 311. Dr. Khan completed a "Diabetes Mellitus Residual Functional Capacity Questionnaire" in which he opined that plaintiff should avoid concentrated exposure to extreme cold and heat, cigarette smoke, perfumes, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust and chemicals. *Id*. at 344. Dr. Khan opined that plaintiff would miss four days of work per month due to her impairments. *Id.* The ALJ rejected these opinions by stating, "the findings of Dr. Lenaerts and Dr. Khan are disproportionate to and inconsistent with their own progress reports from the period coinciding with their assessments." *Id.* at 23. He also stated, "It appears Dr. Lenaert [sic] and Dr. Khan relied heavily on the subjective symptomatology of a long term patient, particularly with regard to her reported headaches, and gave little weight to the objective findings which, as noted above, have been minimal. Thus the undersigned can not find those opinions, which may reflect a simple desire to accommodate a sympathetic claimant in her quest for disability benefits, of measurable probative value." *Id*. at 24. Thus, the ALJ wrote in different sections of his opinion that he both credited and rejected these doctors' opinions. He included some of their limitations, but not others, in his RFC determination.

Regarding the State Agency consultants' findings, the ALJ wrote:

> Medical consultants from the State Agency Disability Determination Services who reviewed the evidence did not feel the claimant had any greater limitations than those found in the July 2005 unfavorable decision which concluded that claimant could perform substantially the full range of sedentary work with lifting of 10 pounds occasionally and less than 10 pounds frequently, sitting for six hours in an eight hour day and standing/walking of two hours in an eight hour day and with environmental limitations preclude (sic) exposure to extreme cold, extreme heat, high humidity, fumes, odors, dusts, gases, perfumes, cigarette smoke, soldering fluxes, solvents or cleaners or other chemicals.

*Id.* at 23. This is an accurate description of the State Agency consultants' findings. *See id.* at 281 (finding "*no* exposure to extreme cold, extreme heat, high humidity, fumes, odors, dusts, gases, perfumes, cigarette smoke, soldering fluxes, solvents and cleaners, or chemicals" and that plaintiff was "able to perform past work as claims examiner and/or secretary"). *Id.* at 281

9

(emphasis added). But although the ALJ purported to credit these opinions, he found that plaintiff should have no *concentrated* exposure to these irritants, rather than no exposure at all.

Given all of these inconsistencies, it is unclear how the ALJ formulated his RFC finding, whose opinions he relied upon, what opinions or specific portions of opinions he rejected, and why.[5]

It is noteworthy that the ALJ's decision states that "even if the environmental restrictions from the hypothetical were more restrictive, i.e. precluding all exposure to humidity, noise, vibration, hazards, fumes, odors, dusts, gases, smoke, solvents, cleaners and chemicals, Dr. Dettmer testified that 6,000 in-home telephone solicitor jobs that such a hypothetical person could perform existed in the State of California," and "[b]ased on Mr. Dettmer's testimony, the undersigned concludes that even if the claimant could not perform her past work . . . [she could perform] other work that exists in significant numbers in the national economy." *Id.* at 26-27. The statement is inaccurate–the VE actually testified that there were probably 2000-3000 in-home jobs in California, but possibly half of those jobs were part-time, leaving only 1000-1500 such jobs in California. *Id.* at 389-90. The ALJ did not determine whether this constituted a significant number of jobs. Second, this statement does not take into account Dr. Barger's opinion--which, as explained above, the ALJ purported to credit--that plaintiff's symptoms were frequently severe enough to interfere with her attention and concentration needed to perform even simple work tasks, and that excess fatigue would affect plaintiff's ability to work at a regular job on a sustained basis. *See id.* at 304-06. These limitations are critical, as the VE testified that if plaintiff's ability to concentrate was frequently interfered with, "it would depend on the extent of the interference obviously, but it could be . . . problematic all the way through completely eliminating work depending on the severity," and that if plaintiff had more than two

---

[5] While the ALJ is free to credit some parts of a physician's opinion and rejects others, the decision must state what portions are credited and what portions are rejected and then state clear and specific reasons for why the later parts of the opinion are rejected. No such statement is provided in the ALJ's decision here.

unpredictable absences a month from work, she would not be "employable in a competitive situation." *Id.* at 388.  Thus, the ALJ's errors were not harmless.

For the reasons stated above, the case must be remanded for further proceedings. Consequently, the court does not reach the plaintiff's remaining arguments.

IV.  <u>CONCLUSION</u>

The ALJ purported to credit plaintiff's treating physician's opinion and the opinions of the State Agency consultants, but did not adopt those opinions in determining plaintiff's RFC. Moreover, the ALJ inconsistently purported to both credit and reject the opinions of plaintiff's other treating physicians.  Accordingly, it is hereby ORDERED:

1.  Plaintiff's motion for summary judgment is granted;

2.  The Commissioner's cross-motion for summary judgment is denied;

3.  The Clerk is directed to enter judgment in the plaintiff's favor; and

4.  The case is remanded for further proceedings consistent with this opinion.

DATED:  March 24, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE